NOT DESIGNATED FOR PUBLICATION

No. 121,796

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of M.M.,
A Minor Child.


MEMORANDUM OPINION


Appeal from Johnson District Court; KATHLEEN SLOAN, judge. Opinion filed January 31, 2020.
Affirmed.


*Dennis J. Stanchik*, of Olathe, for appellant natural mother.


*Elizabeth A. Billinger*, assistant district attorney, and *Stephen M. Howe*, district attorney, for
appellee, and *Ann Marie Harris*, guardian ad litem.


Before GARDNER, P.J., ATCHESON and SCHROEDER, JJ.


PER CURIAM: Mother appeals the termination of her parental rights to her son,
M.M., born in 2007. She argues that the State failed to show that her unfitness was
unlikely to change in the foreseeable future, and that the district court abused its
discretion in finding that termination was in M.M.'s best interests. Finding no error, we
affirm.


*Factual and Procedural Background*


In April 2018, the Kansas Department for Children and Families (DCF) received
allegations that Mother had physically abused M.M. He told a child protection specialist
that he had argued with Mother, and she had elbowed him in the arm and backhanded

1

him in the face. He reported Mother yelled at him a lot, threatened him verbally, and usually backhanded him in his mouth or head when he got in trouble. M.M. was also worried about what Mother would do if she found out he had told someone about the incident, and he did not feel comfortable going home with her.

After M.M. spoke with the child protection specialist, a detective with the Lenexa Police Department took M.M. into protective police custody. The detective reported M.M. had bruises on his arms and some redness on the inside of his lip, which she believed looked like a healed injury.

The State petitioned to declare M.M. a child in need of care (CINC). The district court placed M.M. in the temporary custody of DCF. Mother appeared at an adjudication hearing in May 2018 and entered a no contest statement. The court adjudicated M.M. to be a CINC, ordered M.M. to remain in DCF custody, and ordered Mother to complete case plan tasks designed to reintegrate her child with her.

In January 2019, the State moved to terminate Mother's parental rights. At the evidentiary hearing in May 2019, the following evidence was presented:

- Mother had a history of physically abusive romantic relationships. In January 2018, police were dispatched in response to a physical disturbance. Mother told police her boyfriend at the time had punched, pushed, and strangled her. M.M. knew the boyfriend physically abused Mother and said he had seen him battering Mother.
- Mother had a history of substance abuse. At the start of the case, she submitted a urinalysis (UA) that came back positive for benzodiazepines, methamphetamine, and marijuana. Over the course of the CINC case, Mother failed to submit 71% of her requested drug tests. The UAs she submitted in the CINC case all came back negative, but in January 2019, she tested positive in criminal court for

benzodiazepines, methamphetamine, and marijuana. In August 2018, Mother was in a one-car accident. Police found a glass pipe with residue in Mother's car and what they believed to be methamphetamine and lorazepam in her purse.

- Mother completed a drug and alcohol assessment in October 2018. She did not provide proof she had followed any of the recommendations, which included outpatient substance abuse treatment, mental health treatment, and participation in 12-step meetings.

- Mother's case plan required her to initiate monthly meetings with a KVC Behavioral Health worker, but she had only one meeting—in October 2018.

- Mother had no stable housing. She lived in three residences over the course of the case. In March 2019, Mother produced a notarized letter from Chris Walker, stating Mother could live in Walker's home for 12 months. Mother later testified that Walker was the mother of an ex-boyfriend. Mother and the ex-boyfriend had domestic violence charges against each other from when they were together.

- Mother had no legal source of regular income. She testified she had worked at a restaurant for three weeks, and at a retail store for one month, but she did not provide any proof of employment to KVC. She said the last time she had a job for more than six months was in May 2017.

- Mother regularly attended weekly supervised visits with M.M. She was often late at the beginning of the case and missed several visits. During the visits, Mother would discuss topics inappropriate for a 10-year-old, such as her housing situation or attending Alcoholics Anonymous. She also accused M.M. of lying about the physical abuse.

- In December 2018, Mother was arrested for the battery of M.M. She was ordered to have no contact with M.M. from mid-December until the end of February. Mother had seen M.M. only twice since visitation resumed.

- M.M. was living with his grandparents and doing well. He had lived with them before, during Mother's incarceration, and said he would like to stay with them.

The district court terminated Mother's parental rights, making the required findings: that clear and convincing evidence established Mother was unfit; that clear and convincing evidence established Mother's condition was unlikely to change in the foreseeable future; and that termination of Mother's parental rights was in M.M.'s best interests. Mother appeals, challenging only the second and third of these findings, not the initial finding of unfitness.

*Analysis*

A parent has a constitutionally protected liberty interest in the relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). Given the inherent importance and unique character of that relationship, the right has been deemed fundamental. Accordingly, the State may extinguish the legal bonds between parent and child only upon clear and convincing proof of parental unfitness. K.S.A. 2018 Supp. 38-2269(a); *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014).

As provided in K.S.A. 2018 Supp. 38-2269(a), the State must prove the parent to be unfit "by reason of conduct or condition" making him or her "unable to care properly for a child" and that the circumstances are "unlikely to change in the foreseeable future." The statute contains a nonexclusive list of nine conditions that singularly or in combination would amount to unfitness. K.S.A. 2018 Supp. 38-2269(b). And the statute lists four other factors to consider when a parent no longer has physical custody of a child. K.S.A. 2018 Supp. 38-2269(c).

In reviewing a district court's determination of unfitness, an appellate court must be convinced, based on the full evidentiary record considered in a light favoring the State as the prevailing party, that a rational fact-finder could have found that decision "highly

4

probable, i.e., [supported] by clear and convincing evidence." *In re B.D.-Y.*, 286 Kan. at 705. The appellate court cannot weigh conflicting evidence, pass on the credibility of witnesses, or otherwise independently decide disputed questions of fact. 286 Kan. at 705. In short, we must resolve any conflicts in evidence to the State's benefit and against Mother.

The district court found four statutory factors established Mother's unfitness:

- K.S.A. 2018 Supp. 38-2269(b)(3): "the use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental or emotional needs of the child." The district court found Mother had a history of methamphetamine use and had tested positive for methamphetamine twice. She missed most of her required UAs, and she possessed methamphetamine in August 2018. Although Mother occasionally submitted "clean" UAs, she had not been able to demonstrate consistent sobriety.
- K.S.A. 2018 Supp. 38-2269(b)(4): "physical, mental or emotional abuse or neglect or sexual abuse of a child." The district court found Mother had a history of physically abusing M.M. He said he did not feel safe in Mother's care and she needed help. M.M. had been exposed to domestic violence between Mother and her boyfriend. Mother had also accused M.M. of lying about physical abuse, which the court found to be emotionally neglectful behavior.
- K.S.A. 2018 Supp. 38-2269(b)(7): "failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family." The district court found Mother had been offered case plan tasks as well as a written reintegration plan, and Mother had reviewed those tasks. KVC was available by phone, available for worker-parent meetings, and supervised Mother's weekly visits. KVC also ensured M.M.'s needs were being met.
- K.S.A. 2018 Supp. 38-2269(b)(8): "lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the

5

child"; and K.S.A. 2018 Supp. 38-2269(c)(3): "failure to carry out a reasonable plan approved by the court directed toward the integration of the child into a parental home." The district court found Mother had failed to complete most of her case plan tasks. Mother completed a drug and alcohol assessment but did not follow any of the recommendations. She attended most of her visits with M.M., but she would discuss inappropriate topics with him. She did not have housing or a job. The court also noted Mother had a history of incarceration and had a pending criminal case against her.

After finding Mother unfit based on these statutory factors, the district court found Mother's unfitness was unlikely to change in the foreseeable future. The court found Mother had not addressed the physical abuse which brought M.M. into State custody. Mother did not complete her reintegration tasks. She did not have a home or a job. She also continued to use methamphetamine. The court added, "[Mother's] testimony was at times odd and somewhat nonsensical, causing this Court to be concerned about her ability to care for a child." The court held,

> "That concern, together with her failure to complete her reintegration plan, her history of methamphetamine usage, her demonstrated lack of sobriety, her criminal history, her history of incarceration, her arrest at the conclusion of the trial, her failure to properly address ongoing drug usage, and her inability to prove to this court that she can care for her son's ongoing physical, mental and emotional needs, leads the Court to conclude and find that her conditions of unfitness are unlikely to change in the immediate or foreseeable future."

*The district court did not err in finding Mother was unlikely to become fit in the foreseeable future.*

Mother does not challenge the district court's finding that she was unfit. Instead, she focuses on the district court's finding that her unfitness was unlikely to change in the

6

foreseeable future. In gauging the foreseeable future, the courts should use "child time" as the measure. As the Revised Kansas Code for Care of Children, K.S.A. 2018 Supp. 38-2201 et seq., recognizes, children experience the passage of time in a way that makes a month or a year seem considerably longer than it would for an adult, and that different perception typically points toward a prompt, permanent disposition. K.S.A. 2018 Supp. 38-2201(b)(4); *In re M.B.*, 39 Kan. App. 2d 31, 45, 176 P.3d 977 (2008); *In re G.A.Y.*, No. 109,605, 2013 WL 5507639, at *1 (Kan. App. 2013) (unpublished opinion) ("'child time'" differs from "'adult time'" in care proceedings "in the sense that a year . . . reflects a much longer portion of a minor's life than an adult's").

Mother admits that her behavior over the course of the case shows she has a substance abuse problem. But she argues:

- substance abuse is treatable,
- she had the potential to overcome her addiction,
- she submitted at least eight clean UAs, and
- most of the tests she missed were because of her lack of transportation.

Granted, Mother did submit several clean UAs, but she did not show consistent sobriety. She missed most of her UAs, even during months when she had her own car. While she completed a drug and substance abuse assessment, she did not follow through with the recommendations. Police found methamphetamine and paraphernalia on her in August 2018. And in January 2019, she tested positive for several substances, including methamphetamine. Although Mother testified she had begun receiving mental health treatment shortly before the trial, she did not provide any proof of that treatment to KVC. Her behavior did not demonstrate a commitment to achieving and maintaining sobriety.

Mother also notes she had begun living with Walker and she could live there for at least a year. She testified the housing was suitable for M.M. But a family support worker

7

expressed concerns about that housing option because it was temporary and because Mother had been in a physically abusive relationship with Walker's son. Those are legitimate concerns.

Mother also testified that she had been a licensed cosmetologist. She argues on appeal that "she had taken steps to obtain reinstatement of her cosmetology license [and] she had made plans to begin working for a cosmetologist who was in the process of retiring." But her testimony about her cosmetology license and her employment prospects was unclear. She could not articulate what she needed to do to reinstate her license. Nor could she clearly explain the possible job opportunity or when it would start. Mother's testimony fails to show that her plans were anything more than wishful thinking.

This case began as a result of allegations of physical abuse against M.M., but Mother has never addressed this issue. At the beginning of the case, she denied intentionally hitting M.M. or using physical discipline. She later accused M.M. of lying about the abuse. As one of her case plan tasks, she had to complete a domestic abuse assessment for perpetrators. Yet Mother never completed that assessment, nor did she provide proof that she had completed any parenting classes. Mother gave the district court no reason to find that her behavior toward M.M. would be any different in the foreseeable future.

Having considered the record in a light favoring the State as the prevailing party, we agree that a rational fact-finder could have found it highly probable that Mother's condition was unlikely to change in the foreseeable future.

*The district court did not err in finding it in M.M.'s best interests to terminate Mother's parental rights.*

Mother next argues the district court erred in finding it in M.M.'s best interests to terminate her parental rights.

Having found unfitness, the district court must then decide whether termination of parental rights is "in the best interests of the child." K.S.A. 2018 Supp. 38-2269(g)(1). As directed by the language of K.S.A. 2018 Supp. 38-2269(g)(1), the district court gives "primary consideration to the physical, mental[,] and emotional health of the child." The district court makes that determination based on a preponderance of the evidence. See *In re R.S.*, 50 Kan. App. 2d at 1115-16. The best-interests issue is entrusted to the district court acting within its sound judicial discretion. 50 Kan. App. 2d at 1116. An appellate court reviews those sorts of decisions for an abuse of discretion. A district court exceeds that broad latitude if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013); *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011).

The district court held it was in M.M.'s best interests to terminate Mother's parental rights, finding: "At the time of trial, [M.M.] was an eleven-year-old boy. He recently turned twelve. He has appropriate and safe permanency options available to him. He resides with his grandparents, and considers them his stability and considers their home as his own."

Mother contends the court's findings about M.M. were less extensive than its findings on her unfitness. She adds the court made no findings about the possible harm to M.M. by terminating her parental rights, and the record contains no direct testimony on

9

this point. But Mother cites no authority requiring courts to make specific findings on what effect termination might have on the child. And Mother did not object to the lack of findings on this point. When a party fails to object to inadequate findings, we ordinarily presume the district court found the facts necessary to support its position. *Harrison v. Tauheed*, 44 Kan. App. 2d 235, 253, 235 P.3d 547 (2010).

Our review of the record shows a preponderance of the evidence supporting the district court's conclusion. M.M. said he did not have a good relationship with Mother and she physically abused him. M.M. was withdrawn during many of his supervised visits and would sometimes move away from Mother when she moved closer to him. M.M. had previously spent over a year living with his grandparents while Mother was incarcerated. And he had also lived there with Mother for another year. His grandmother testified he was doing well and appeared comfortable in their home. M.M. had also expressed his desire to live with his grandparents. From this evidence, the district court could reasonably find it would be in M.M.'s best interests to terminate Mother's parental rights. We find no abuse of discretion in that decision.

Affirmed.

10